DECISION
The plaintiffs, prospective neighbors of a proposed Class B liquor license establishment, appeal from a decision of the Director of the Department of Business Administration ("the Director"). In that decision, the Director affirmed a grant by the Pawtucket Board of License Commissioners ("the Board") of a liquor license transfer to the defendant, Churrasqueira Da Beira, Inc. ("Churrasqueira"). For the reasons set forth in this decision, this Court affirms the decision of the Director.
 Facts and Travel
Defendant-by-intervention, Churrasqueira, wanted to transfer its Class B liquor license from the location in the City of Pawtucket where it had operated a Portuguese family-style restaurant for 15 years to a new restaurant location in Pawtucket on the same street where it could secure lower rent. To seek permission to transfer its liquor license, it applied to its local licensing authority, defendant Pawtucket Board of License Commissioners ("the Board"). The Board then was obligated statutorily to "give notice [of the proposed transfer] by advertisement published once a week for at least two (2) weeks in some newspaper published in the city or town where the applicant proposes to carry on business." R.I. Gen. Laws. § 3-5-17. The Board also was obligated to give notice of the application, "by mail, to all owners of property within two hundred feet (200') of the place of business seeking the application." (hereinafter referred to as the "property-owning neighbors). Id. It is undisputed from the record that the Board complied with its obligation to give notice by publication. It is equally undisputed that the plaintiff, The Door Christian Fellowship Church ("the Fellowship Church"), while not an "owner of property," was located just across the street from and "within two hundred feet (200') of the place of business seeking the application." Id. It is uncontested in the record, however, that the Fellowship Church did not have a Certificate of Zoning Compliance until July 15, 1999 — after the Board had considered Churrasqueira's application.
On June 9, 1999, the Board conducted a public hearing and granted Churrasqueira's application by unanimous voice vote. During the hearing, three property-owning neighbors objected and made clear the close proximity of the Fellowship Church to the proposed site.[1] As recorded in the Board's minutes, after the close of the hearing, the Board proceeded as follows:
 With majority consent of the Council,[2] upon motion made by Councilor Wildenhain, seconded by Councilor Moran, the following application for license is GRANTED WITH STIPULATIONS, on unanimous voice vote:
 CLASS B (Victualer)
 Churrasqueira DaBeira, Inc., 569 Broadway (transfer location from 434 Broadway) LIC#10257[.]
Thereafter, on June 23, 1999, the Board released the aforementioned minutes of its June 9, 1999 hearing. Finally, on June 28, 1999, five days after the release of the minutes but nineteen days after the Board's voice vote, the following parties appealed to the Director from the decision of the Board reflected in the June 23, 1999 minutes of the Board's meeting: (1) two of the three property-owning neighbors who objected at the Board's hearing; (2) certain additional property-owning neighbors (who, combined, purportedly owned the greater part of the land within two hundred feet (200') of the proposed license site);[3] and (3) the Fellowship Church.
The Director of the Department of Business Regulation, through a Hearings Officer, held hearings on the de novo review of the Board's decision on various dates in October 1999. By decision dated May 10, 2000, the Director found, inter alia, that the appeal was untimely and that the Fellowship Church "did not have standing to object below or to appeal in the instant hearing since it was not operating legally during the relevant time periods." The Director concluded by stating that "[t]he decision granting the transfer is affirmed."[4] The plaintiffs duly appealed from the Director's decision to the Rhode Island Superior Court pursuant to R.I. Gen. Laws § 42-35-15.
Before considering the merits of this appeal, this Court must note that there are three classes of plaintiffs here: (1) property-owning neighbors who appeared before both the Board and the Director; (2) property-owning neighbors who did not appear before the Board but did appear before the Director; and (3) the Fellowship Church, a non-property-owning neighbor that did not appear before the Board but did appear before the Director. The Court will consider each class as appropriate. Moreover, the Court notes that it must limit its review of the Director's decision to the record, R.I. Gen. Laws § 42-35-15(f), and that it cannot substitute its judgment for that of the Director as to the weight of the evidence on questions of fact, R.I. Gen. Laws 1956 § 42-35-15(g). The Court can reverse the Director's decision, however, if it is in violation of constitutional or statutory provisions or is affected by other error of law. R.I. Gen. Laws § 42-35-15(f)(1) (4). As no fact of consequence is contested here, this Court's task is essentially to review the propriety of the Director's decision as a matter of law.
 The Timeliness of the Plaintiffs' Appeal to the Director
Pursuant to R.I. Gen. Laws § 3-7-21, "the [D]irector has the right to review the decision of any local [liquor-licensing] board . . . but the application shall be made within ten days (10) after the making of the decision or order sought to be reviewed." Though our Supreme Court has not yet explicitly so held, this Court concludes that just as the filing of a notice of appeal to the Supreme Court is jurisdictional, the filing of an appeal application from a decision by a liquor-licensing Board to the Director is jurisdictional. Accordingly, the Director lacks jurisdiction to review de novo a Board's decision if an appeal to the Director is filed too late. See Craveiro v. Craveiro, 773 A.2d 896 (R.I. 2001) (dismissing late filed appeal to Supreme Court); Garganta v. MobileVillage, Inc., 730 A.2d 1 (R.I. 1999) (under the Residential Landlord and Tenant Act, parties who miss the five-day deadline for appealing to the Superior Court waive their appeal); Mauricio v. Zoning Board of Review,590 A.2d 879 (R.I. 1991) (failure to file complaint within 20 days after filing of a zoning board's decision does not satisfy the requirement for appeals to the Superior Court); Considine v. Rhode Island Dep't ofTransportation, 564 A.2d 1343 (R.I. 1989) (pursuant to the Administrative Procedures Act, the Superior Court lacks jurisdiction to hear an appeal filed more than thirty days after a final, adverse determination);Marcello v. DeFreitas, 122 R.I. 389, 407 A.2d 490 (1979) (failure to file an appeal to the Superior Court from a District Court judgment within two days of its entry precludes de novo review by Superior Court).
In this case, it is undisputed that the plaintiffs did not file an appeal to the Director from the Board's decision within ten (10) days of the hearing at which the Board made its decision by voice vote. All classes of plaintiffs argue, however, that the ten-day appeal period should not run from the date of hearing at which the Board rendered its decision. They argue instead that the appeal period should begin to run from the date of issuance of the Board's written decision or, alternatively, from the date of publication of the Board's minutes — either of which would render their appeal to the Director timely.
Nowhere in Title 3 of the General Laws (entitled "Alcoholic Beverages"), however, is there any requirement that a decision of a local liquor licensing board must be written to be effective or to start the running of the time within which an application for de novo review must be filed with the Director. See generally Mauricio v. Zoning Board ofReview, 590 A.2d 879, 880 (R.I. 1991) ("when the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no need for statutory construction or the use of interpretive aids"). The plaintiffs make no claim to the contrary but rather contend that "the statute[s] do not specifically state that the decision can be done orally so then it would follow that it should be written."
Two sections of Title 3 are directly implicated in addressing this issue: R.I. Gen. Laws § 3-5-17 and R.I. Gen. Laws § 3-7-21. Section 3-5-17 provides in relevant part, as follows:
 Before granting a license to any person under the provisions of this chapter and title, the board, body or official to whom application for the license is made, shall give notice by advertisement . . . . At the time and place [of the hearing] a fair opportunity shall be granted the remonstrants to make their objections before acting upon the application." (Emphasis added).
R.I. Gen. Laws § 3-7-21 provides in pertinent part, as follows:
 "Upon the application of . . . [certain delineated entities], the [d]irector has the right to review the decision of any local board . . . . Notice of the decision or order shall be given by the local or licensing board to the applicant within twenty-four (24) hours after the making of its decision or order and the decision or order shall not be suspended except by the order of the director." (Emphasis added).
Though these statutes clearly contemplate the Board "acting upon the application" and "making . . . its decision," nowhere is it required, either explicitly or implicitly, that the Board must issue a written decision. Indeed, the actual form of notice of an administrative decision may vary according to the circumstances and nature of the decision. Charles H. Koch, Jr., 2 Administrative Law and Practice, § 5.61 at 211 (2d ed. 1997). Moreover, although our Supreme Court has not yet directly addressed the issue of whether a liquor licensing board must reduce its decisions to writing, it has stated that "[a] decision, as that term is used in the statute [that is R.I. Gen. Laws § 3-7-21], contemplates action taken by the council after it has conducted a hearing referred to in § 3-5-17." Beacon Restaurant, Inc. v. Adamo,103 R.I. 698, 704, 241 A.2d 291, 294 (1968). The Supreme Court did not state in that case that the "action taken" must culminate in a written decision to be effective Id. Moreover, the General Assembly is quite capable of articulating when a decision must be in writing. See, e.g.,
R.I. Gen. Laws § 8-1-3 ("[t]he supreme court shall render written opinions in all cases decided by it wherein points of law, pleading, or practice have arisen which are novel or of sufficient importance to warrant written opinions"); R.I. Gen. Laws § 45-24.1-4(e) ("[a]ll decisions of the [historic district] commission [of any city or town] shall be in writing").
Furthermore, because the Board "has not at any time adopted any rules of procedure and [because] . . . there are no statutory regulations spelling out the same[,] the . . . [board's] deliberations . . . [are] to be governed by generally accepted rules of parliamentary procedure."Lecht v. Stewart, 483 A.2d 1079, 1080-81 (R.I. 1984). "In determining proper parliamentary procedure, it is permissible to resort to Robert's Rules of Order, the widely accepted codification of parliamentary law."Id. at 1081 (citation omitted). In that regard, Robert's Rules of Order provide that "[a] vote by voice is the regular method of voting on any motion that does not require more than a majority vote for its adoption," R.O.N.R. (10th ed.), p. 44, 1. 4-6, and that "[t]he basic principle of decision in a deliberative assembly is that, to become the act or choice of a body, a proposition must be adopted by a majority vote," R.O.N.R. (10th ed.), p. 4, 1. 5-7 (emphasis added).
Here, after the Board concluded its hearing on the proposed liquor license transfer, a member of the Board moved to decide whether to grant the request. In accordance with the rules of parliamentary procedure, the Board used the "regular method" of voice vote that resulted in a unanimous grant of the requested liquor license transfer. To become effective as an act of the Board, nothing more was required by either Rhode Island law or parliamentary procedure.
Accordingly, and notwithstanding that one of the members of the Board said at the hearing that the "Department of Zoning and Code Enforcement will be conducting an inspection" of the lawful zoning status of the Fellowship Church, this Court finds that the Board made its decision and unequivocally granted the requested liquor license transfer by voice vote on June 9, 1999 (albeit with certain stipulations not of consequence here). As such, the ten (10) day time period within which to apply to the Director for de novo review of the Board's decision began to run from that date. As plaintiffs did not file an appeal to the Director, however, until June 28, 1999 (some nineteen days later), the appeal was not timely filed and the Director correctly determined that he was without authority to review the matter de novo.[5]
 The Due Process Claim of the Fellowship Church
The Fellowship Church further asserts that it was denied due process when the Board held its hearing without giving it adequate notice and an opportunity to be heard at the June 9, 1999 hearing on the application filed by Churrasqueira for a transfer of its liquor license. As previously noted, the Board was required by statute to give written notice, "by mail, to all owners of property within two hundred feet (200') of the place of business seeking the application." R.I. Gen. Laws § 3-5-17. The Fellowship Church admits that it is not the owner of the property from which it operates. As such, it was not entitled to actual notice pursuant to R.I. Gen. Laws § 3-5-17. Yet the Fellowship Church asserts that by virtue of R.I. Gen. Laws § 3-7-19 it is provided with "substantial rights" that deserve protection, entitle it to adequate notice and an opportunity to be heard on any liquor license transfer application and afford it standing to appeal under R.I. Gen. Laws § 3-7-21.
Section 3-7-19 provides that "[r]etailers' Class B . . . licenses under this chapter shall not be issued to authorize the sale of beverages in any building . . . within two hundred feet (200') of the premises of . . . a place of public worship." Section 3-7-21 provides that "[u]pon the application of . . . any person authorized to protest against the granting of a license, including those persons granted standing pursuant to §3-5-19, . . . the [D]irector has the right to review the decision of any local [B]oard."[6] Section 3-5-19 in turn provides that a liquor licensing board "may permit the license to be at any other place within the limits of the town or city . . ., but in all cases of change of licensed place or of transfer of license, the issuing body shall, before permitting the change or transfer, give notice of the application for the change or transfer in the same manner as is provided in this chapter in the case of original application for license." Finally, applications for a new license are governed by R.I. Gen. Laws § 3-5-17 and its now-familiar requirements that the Board give "notice by advertisement" to the public generally and notice by mail to property owners within two hundred feet.
As noted previously and as conceded by the Fellowship Church, it was not entitled to notice as a property owner under R.I. Gen. Laws §3-5-17. It further concedes that the Board gave it appropriate notice by publication under that statute. The Fellowship Church, then, received all of the notice that it was entitled to receive pursuant to R.I. Gen. Laws § 3-5-17. Thus, even if the Fellowship Church is granted standing under R.I. Gen. Laws § 3-7-21 to object and appeal pursuant to the advertisement requirement contained in R.I. Gen. Laws § 3-5-17, and even assuming it was lawfully operating and can be characterized as a "place of public worship," its failure to timely appeal from the Board's decision is not excused by any alleged deficiency of notice since it received all the notice it was entitled to receive under R.I. Gen. Laws § 3-5-17. See D'Agostino v. Doorley, 118 R.I. 700, 375 A.2d 948
(1977) (constructive notice by publication was sufficient for due process). Having received adequate notice, the Fellowship Church similarly was granted a fair opportunity to be heard. Thus, while this Court agrees generally with the Fellowship Church that "place[s] of public worship" are accorded special status under R.I. Gen. Laws § 3-7-19, that status alone does not give it a privilege to bypass the statutory requirements of filing a timely administrative appeal to obtain de novo
review before the Director. The Fellowship Church simply failed to file a timely appeal from the Board's decision to the Director within ten (10) days of that decision after having received proper constructive notice by publication of the hearing that resulted in that decision. It thus received all of the process to which it was due.
 Conclusion
Accordingly, for the reasons set forth in this decision, this Court rejects plaintiffs' appeals and affirms the Director's decision that let stand the Board's decision to grant the requested liquor license transfer. Given the basis of this disposition, the other issues raised by the plaintiffs need not be addressed in the context of this administrative appeal.
Counsel shall submit forthwith for entry an agreed upon form of order and judgment that is reflective of this Court's decision.
[1] By statute, "[r]etailers' Class B . . . licenses . . . shall not be issued to authorize the sale of beverages in any building . . . within two hundred feet (200') of the premises of . . . a place of public worship." R.I. Gen. Laws § 3-7-19.
[2] In the City of Pawtucket, the City Council sits as the Pawtucket Board of License Commissioners.
[3] By statute, "[r]etailers' Class B . . . licenses . . . shall not be issued to authorize the sale of beverages in any building where the owner of the greater part of the land within two hundred feet (200') of any point of the building files with the body or official having jurisdiction to grant licenses their objection to the granting of the license." R.I. Gen. Laws 1956 § 3-7-19.
[4] Technically, because the Director determined that the plaintiffs' appeal was untimely, and that he had no power to consider the merits of the Board's decision underlying that appeal, the Board's decision stood on its own. See generally State v. Berberian, 118 R.I. 413, 415-16,374 A.2d 778, 780 (1977).
[5] It is noteworthy in this regard that the record reflects that in response to an inquiry by the Director's Hearing Officer, plaintiffs' counsel conceded that a separate written decision was unnecessary for those who attended the hearing or for those who were notified of the hearing yet failed to attend, as follows:
 If the objectors, when they see the ad in the newspaper and read the letters that come certified, if they do not go to the hearing and voice their opinion, I don't think they're entitled to having a separate notice sent to them of what the decision was. They didn't avail themselves of the opportunity of the hearing.
II Transcript of Proceedings in Adjoining Property Owners v. PawtucketBoard of License Comm'rs, LCA-PA-99-12 at 33 (October 29, 1999).
[6] This Court notes a discrepancy between this text of R. I. Gen. Laws§ 3-7-21, as published in the General Laws, and the text as provided in the Public Law that last substantively amended that section, which provides that "[u]pon the application of . . . any person hereby
authorized to protest against the granting of a license, including those persons granted standing pursuant to § 3-5-19, . . . the director has the right to review the decision of any local board." P.L. 1996, ch. 100, § 10 (emphasis added). Presumably, the law revision commission precipitated the deletion of the word "hereby" in the reenactment of P.L. 1998, ch. 441, § 1. Although the Supreme Court has attached significance to the now-apparently-excised word, see Earle v. Pastore,511 A.2d 989, 990-991 (R.I. 1986) ("the word `hereby' in § 3-5-17
[ought have read § 3-7-21 since § 3-5-17 did not, and does not, contain the word `hereby'"] refers to chapter 7 of title 3 and not to chapter 5 of title 3"), the discrepancy is not of great consequence in this case and thus the Court need not consider it further. Cf. Oliveirav. Lombardi, 794 A.2d 453 n. 3 (R.I. 2002) ("this Court will not give effect to substantive changes that alter the meaning of the statute unless the law revisor specifically has called them to the attention of the Legislature during the revision process by specifically including them in the legislation that accomplishes the revision").